```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :   **MEMORANDUM**
            -against-                                       :   **DECISION AND ORDER**
                                                            :
                                                            :   19-cr-613 (BMC)
                                                            :
JOHN CULBERT, JOHN MCMILLAN,                                :
CLIFTON SALVODON,                                           :
                                                            :
                                    Defendant.              :
----------------------------------------------------------- X
```

**COGAN,** District Judge.

  Defendants seek to dismiss Count 3 of the indictment, which charges all three of them with possessing and brandishing a firearm during a crime of violence, pursuant to 18 U.S.C. § 924(c)(1)(A)(i). The purported "crime of violence" upon which Count 3 is based is attempted Hobbs Act robbery. Hobbs Act robbery, of course, is a crime of violence under the "elements clause" of § 924(c) because it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." Indeed, the Hobbs Act forbids the unlawful taking of another's personal property "by means of actual or threatened force, or violence, or fear of injury" in a manner that interferes with interstate commerce. See 18 U.S.C. § 1951(b)(1); United States v. Hill, 890 F.3d 51, 60 (2d Cir. 2018). The narrow question put to the Court is whether *attempted* Hobbs Act robbery is likewise a crime of violence. It is not.

  In United States v. Davis, 139 S. Ct. 2319, 2324, 2336 (2019), the Supreme Court invalidated the portion of § 924(c) that alternatively defined a crime of violence as one "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." According to the Court, this language was unconstitutionally vague and thus cannot form the basis of a criminal conviction. Id. Any

valid application of § 924(c), therefore, must proceed from an underlying conviction qualifying under the elements clause described above.

Moreover, we are instructed to judge whether the underlying conduct amounts to a *categorical* crime of violence under the elements clause – that is, one where the "minimum conduct necessary for a conviction" involves violence. See Hill, 890 F.3d at 55-56. In so doing, a court must "look only to the statutory definitions – *i.e.*, the elements – of the offense" to resolve whether commission of the crime requires violence. See id. (omitting internal quotation marks and alterations) (quoting Descamps v. United States, 570 U.S. 254, 261 (2013)). Such an approach stands in contrast to either a case-by-case determination of how violent the ultimate conduct was or a more general inquiry into "the kind of conduct that the crime involves in the ordinary case." Davis, 139 S. Ct. at 2326 (citing Sessions v. Dimaya, 138 S. Ct. 1204, 1216 (2018)). To be sure, the categorical approach does not humor "the application of legal imagination" to conjure up highly unlikely scenarios in the name of logical purity. See Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007). Yet a predicate crime will not support a conviction under the elements clause of § 924(c) if there is "'a realistic probability, not a theoretical possibility,' that the statute at issue could be applied to conduct that does not" involve violence. Hill, 890 F.3d at 56 (quoting Duenas-Alvarez, 549 U.S. at 193).

The Second Circuit recently faced a similar question regarding conspiracy to commit Hobbs Act robbery. See United States v. Barrett, 937 F.3d 126 (2d Cir. 2019). Upon remand from the Supreme Court in light of the Davis decision, the panel held that "*Davis* precludes us from concluding . . . that Barrett's Hobbs Act robbery conspiracy crime qualifies as a § 924(c) crime of violence." Id. at 127. This conclusion follows naturally from the categorical approach because, as the "essence of a conspiracy" is merely an agreement to commit an unlawful act, see

2

United States v. Barrett, 903 F.3d 166, 177 (2d Cir. 2018), rev'd on other grounds by Davis, 139 S. Ct. 2319, (quoting United States v. Jimenez Recio, 537 U.S. 270, 274 (2003)), there is nothing inherently violent about the crime of conspiracy, no matter how gruesome the culmination of such an agreement might be. Defendants in our case argue that attempted Hobbs Act robbery is likewise devoid of an intrinsic violent character. I agree.

As an initial observation, the Hobbs Act proscribes attempted robbery in the same breath as it proscribes conspiracy to engage in robbery, namely, by forbidding "robbery or extortion *or attempts or conspir[acies] so to do*" (emphasis added). This at least suggests that an analysis of attempted Hobbs Act robbery under § 924(c) should proceed in tandem with that of conspiracy to commit Hobbs Act robbery, which the Second Circuit held does not satisfy § 924(c). See Barrett, 937 F.3d at 130. We are therefore left to determine whether, *ceteris paribus*, a person convicted of attempt under the Hobbs Act is more likely to have engaged in violent conduct than is a person convicted of Hobbs Act conspiracy, and if so, whether any such increased likelihood renders the former a categorical crime of violence.

Surely the first question must be answered in the affirmative. A person could set out to (1) deprive someone of her property (2) by threatened force (3) in a way that affects commerce, but end up only threatening someone with force before the authorities arrest him. In that scenario, the culprit has undoubtedly acted violently even though his failure to steal something must restrict a charge against him to attempted robbery. Thus, there can be no serious doubt that Hobbs Act attempt has a higher likelihood of being violent than a mere agreement to commit robbery in the future (per conspiracy).

Nevertheless, an attempt to commit Hobbs Act robbery need not categorically admit of such a violent scenario. "To prove attempt, the government must establish beyond a reasonable

3

doubt that the defendant (a) had the intent to commit the object crime and (b) engaged in conduct amounting to a substantial step towards its commission." United States v. Anderson, 747 F.3d 51, 73 (2d Cir. 2014) (*colatus*[1]). As far as the first element goes, a person's singular intention to commit the crime is no more violent than the shared intention to do the same, as is the case in a conspiracy. Thus, if an attempted Hobbs Act robbery is a categorical crime of violence, it must be that the minimum conduct necessary in taking a "substantial step" toward committing the offense requires violence. See Hill, 890 F.3d at 55-56.

So what activities qualify as a "substantial step"? In United States v. Stallworth, 543 F.2d 1038, 1041 (2d Cir. 1976), the Second Circuit upheld an attempted robbery conviction where the defendants "reconnoitered the bank, discussed (on tape) their plan of attack, armed themselves and stole ski masks and surgical gloves," had a getaway car ready, and "moved ominously toward the bank." None of these actions was violent.

Even less was sufficient to convict the defendants of attempted bank robbery in United States v. Jackson, 560 F.2d 112 (2d Cir. 1977). In that case, the Court upheld the conviction where the defendants "reconnoitered the place contemplated for the commission of the crime and possessed the paraphernalia to be employed in the commission of the crime." Id. at 120.[2] There, too, violence – threatened, attempted, or otherwise – was absent. In United States v Muratovic, 719 F.3d 809, 816 (7th Cir. 2013), the Seventh Circuit affirmed an attempted robbery conviction where "the co-conspirators had assembled a team, finalized the robbery plan, conducted surveillance on the truck, procured two handguns and all other supplies called for in the plan,"

---

[1] I.e., edited citation.

[2] The Government urges the Court not to read this case as concluding that "merely surveilling a target would be sufficient to complete an attempted Hobbs Act robbery." That advice is well-taken, yet the case does undoubtedly confirm that an attempted robbery need not have involved in an act of violence.

4

filled up gas cans for the drive, and arrived on location of the would-be crime. No violence. And in United States v. Shakur, Nos. 82-cr-312 and 84-cr-220, 1988 WL 36170, at *2 (S.D.N.Y. Apr. 13, 1988), the court denied the defendants' Rule 29 motion for acquittal of attempted bank robbery where "the individuals concerned reconnoitered the territory, made elaborate plans, obtained arms and instruments of disguise, arranged getaway cars, and were at the site of the target bank in their vehicle, armed, booted and spurred, ready to go." No violence.

Additionally, Section 5.01 of the Model Penal Code provides that the following conduct may constitute a substantial step if it is strongly corroborative of the actor's criminal purpose:

a) lying in wait, searching for or following the contemplated victim of the crime;

b) enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission;

c) reconnoitering the place contemplated for the commission of the crime;

d) unlawful entry of a structure, vehicle or enclosure in which it is contemplated that the crime will be committed;

e) possession of materials to be employed in the commission of the crime, that are specially designed for such unlawful use or that can serve no lawful purpose of the actor under the circumstances;

f) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, if such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances;

g) soliciting an innocent agent to engage in conduct constituting an element of the crime.

Although the Model Penal code is only persuasive authority for our purposes, it is relevant that in "both *Stallworth* and *Jackson*, the Second Circuit cited with approval and applied Section 5.01." Shakur, 1988 WL 36170, at *2. Because these actions do not necessarily – or even commonly – involve force or violence or fear of injury, yet may alone or together constitute attempted Hobbs Act robbery, I cannot perceive attempted Hobbs Act robbery to be a categorical

crime of violence under § 924(c). And this result comports with several other decisions of district courts within this Circuit. See, e.g., United States v. Pica, No. 8-cr-559 (CBA), ECF No. 378 (E.D.N.Y. Mar. 17, 2020); United States v. Cheese, No. 18-cr-33, 2020 WL 705217 (E.D.N.Y. Feb. 12, 2020); Lofton v. United States, No. 16-cv-6324, 2020 WL 362348 (W.D.N.Y. Jan. 22, 2020); United States v. Tucker, No. 18-cr-119, 2020 WL 93951 (E.D.N.Y. Jan. 8, 2020).

Opposing this conclusion, the Government marshals a number of cases holding that attempted Hobbs Act robbery *is* a crime of violence. But these cases all-but-uniformly apply the faulty analysis most prominently advocated by the Eleventh Circuit in United States v. St. Hubert, 909 F.3d 335, 352 (11th Cir. 2018) (quoting Hill v. United States, 877 F.3d 717, 719 (7th Cir. 2017)):

> A completed Hobbs Act robbery itself qualifies as a crime of violence under § 924(c)(3)(A) and, therefore, attempt to commit Hobbs Act robbery requires that St. Hubert intended to commit every element of Hobbs Act robbery, including the taking of property in a forcible manner. . . . [T]he definition of a crime of violence in § 924(c)(3)(A) equates the use of force with attempted force, and thus the text of § 924(c)(3)(A) makes clear that actual force need not be used for a crime to qualify under § 924(c)(3)(A). Thus, . . . given § 924(c)'s 'statutory specification that an element of attempted force operates the same as an element of completed force, and the rule that conviction of attempt requires proof of intent to commit all elements of the completed crime,' attempted Hobbs Act robbery qualifies as a crime of violence under § 924(c)(3)(A) as well.

Although a satisfying syllogism on some level, this argument "collapses the distinction between acts constituting an underlying offense and acts constituting an attempt of the underlying offense, which does not square with the Supreme Court's decision in *Davis*." Cheese, 2020 WL 705217, at *3. Thus, at most, someone who takes a non-violent, substantial step toward committing a Hobbs Act robbery has *intended* to attempt violence. Moreover, as Judge Johnson pointed out in Tucker, 2020 WL 93951, at *6, "[s]uch an absolute rule (i.e. that

6

an attempt to commit any violent crime will necessarily be itself a violent crime) seems at odds with the requirements of the categorical analysis."

The Government further contends that the Second Circuit's decision in United States v. Tabb, 949 F.3d 81 (2d Cir. 2020), is determinative of its position. In Tabb, the Court held that attempted assault in the second degree under New York Penal Law § 120.05(2) constitutes a predicate crime of violence under the elements clause of the United States Sentencing Guidelines. And so, the Government says, attempts of all other crimes of violence are likewise violent. But the scenario presented in Tabb is distinguishable from our case in at least two ways. First, assault in the second degree requires the perpetrator *only* to intentionally "cause physical injury to another person." See N.Y.P.L. § 120.05(2). That is the sole action and result encompassed in the crime. Necessarily, then, any person attempting to commit assault in the second degree would be directing his energies singularly toward that violent and injurious end. Not so Hobbs Act robbery, which has several non-violent elements and envisions numerous avenues toward their accomplishment.

Second, and more importantly, the crime of attempt under New York law "requires that the action taken by an accused be 'so near to its accomplishment that in all reasonable probability the crime itself would have been committed, but for timely interference.'" United States v. Pereira-Gomez, 903 F.3d 155, 166 (2d Cir. 2018) (quoting People v. Mahboubian, 74 N.Y.2d 174, 196, 544 N.Y.S.2d 769, 781 (1989)). To meet this standard, "the defendant must have engaged in conduct that came *dangerously near* commission of the completed crime." People v. Denson, 26 N.Y.3d 179, 189, 21 N.Y.S.3d 179, 187 (2015) (emphasis added) (*colatus*). Indeed, as the Second Circuit observes, New York's test "categorically requires that a person take a 'substantial step' toward the use of physical force." See United States v. Thrower, 914

7

F.3d 770, 776-77 (2d Cir. 2019). But federal attempt is much broader than the state version, requiring simply that a "substantial step" be taken. See People v. Acosta, 80 N.Y.2d 665, 670, 593 N.Y.S.2d 978, 981 (1993) (explaining that New York's attempt statute is "more stringent" than the "substantial step" test used in the Second Circuit). It is thus categorically certain that a state attempt conviction involves "the use, attempted use, or threatened use of physical force," whereas, as we have already determined, a federal attempt conviction admits of no such certainty.[3]

Perhaps a narrower application of the elements clause is the logical tradeoff for having a broader federal definition of attempt than our state version has. That is not for the Court to say. But to interpret "crime of violence" in the manner advocated by the Government would create the very same vagueness that the Supreme Court sought to eradicate in Davis.

## CONCLUSION

Defendants' [23] motion to dismiss count three of the indictment is granted.

**SO ORDERED.**

                                                                        U.S.D.J.

Dated: Brooklyn, New York
       April 13, 2020

---

[3] The same reasoning applies to United States v. Thrower, 914 F.3d 770 (2d Cir. 2019), which the Government argues "explicitly foreclose[s] the defendants' argument" because it involved state attempted robbery in the third degree. Again, the Government glosses over the significant difference between the state and federal standards for attempt liability.